IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-757-BO

| | |
|---|---|
| SHERYL WEBB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court on the parties' cross-motions for judgment on the pleadings. [DE 25 & 29]. A hearing on this matter was held in Raleigh, North Carolina on February 5, 2014 at 11:00 a.m. For the reasons discussed below, plaintiff's motion is GRANTED, defendant's motion is DENIED, and, accordingly, the judgment of the Administrative Law Judge is REVERSED.

## BACKGROUND

Ms. Webb filed her first concurrent application for a period of disability and disability insurance benefits ("DIB"), and for supplemental security income ("SSI") on August 8, 2007, alleging that she became disabled and unable to work due to discogenic and degenerative disorders of the back, as well as hypertension. She was denied initially and the record does not reflect that she requested reconsideration making the initial denial the final decision of the Commissioner. On March 17, 2009, Ms. Webb filed a second concurrent application alleging the same impairments. She was again denied at the initial level and did not seek reconsideration.

On March 5, 2010, Ms. Webb protectively filed a third claim for DIB and SSI and added a claim for disabled widow's benefits, alleging disability beginning on February 1, 2008 resulting from back disorders, blood clots, and obesity. She was denied initially and upon reconsideration. On March 30, 2011, a hearing was held before an Administrative Law Judge ("ALJ"). At the hearing Ms. Webb amended her onset date to June 7, 2009. On June 13, 2011, the ALJ issued a decision denying Ms. Webb's claim. The Appeals Council declined review on September 22, 2012, rendering the ALJ's decision the final decision of the Commissioner. Ms. Webb now seeks review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## MEDICAL HISTORY

Ms. Webb has been diagnosed with lumbosacral degenerative disc disease, left arm deep venous thrombosis, obesity, and hypertension. [Tr. 361, 432, 472]. After a motor vehicle accident in 2001, Ms. Webb's medical history shows intermittent complaints of cervical, upper back, and lower back pain. [Tr. 318, 321, 361, 369, 373, 384, 387, 390, 396, 401–02, 402, 404, 405, 407, 408, 409, 435]. On February 22, 2007, Dr. Wang noted that a lumbar MRI showed degenerative disc disease at L4-5 and L5-S1, with a small posterolateral right disc bulge at L4-5 causing mild thecal sac compression. [Tr. 272–73, 367]. Her gait was intact and her sensation normal. [Tr. 367]. On June 21, 2007, she was counseled on surgical options, but declined, opting for epidural steroid injections instead. [Tr. 419]. On June 7, 2009, she was admitted to the hospital for worsening neck pain, left arm pain and swelling, and shoulder pain. [Tr. 436–37]. A CT scan was unremarkable except for a uterine fibroid. [Tr. 515, 535]. On April 16, 2010, Ms. Webb was admitted for elevated INR levels, however she denied symptoms other than dark urine for a few days. [Tr. 472]. She was discharged a day later with instructions to see her doctor. [Tr. 473]. On January 31, 2011, Ms. Webb sought treatment for neck pain that radiated down her

right side to her leg, as well as for blood clots in her left arm. [Tr. 531]. Treatment notes show no change in range of motion, strength or sensation of upper extremities or neck. [*Id.*].

On January 10, 2008, Dr. Clark performed a consultative examination. [Tr. 421–24]. Dr. Clark noted that Ms. Webb suffered from pain in her back, right arm, and right leg with numbness. [Tr. 421]. She reported that she had one epidural steroid injection that worked quite well for a month, but she then lost her Medicaid coverage and could not afford subsequent injections or her daily medication. [Tr. 421]. She reported taking over the counter pain medication and that she cannot lift anything of substance. [*Id.*]. She reported that she could sit for 30 minutes, stand for 20 to 30 minutes, and could walk for less than a block. [Tr. 422]. Upon examination, Dr. Clark concluded that Ms. Webb had hypertension with fairly good control off of medication. [Tr. 423]. He noted that her major problem relates to lumbar spine pain, right radicular pain with numbness, that she cannot sit for more than 30 minutes or stand for more than 20 to 30 minutes and cannot walk as far as a block. [*Id.*].

On January 18, 2008, state agency medical consultant Dr. Martin reviewed Ms. Webb's medical records and concluded that she could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for a total of about six hours in an eight hour workday and was limited to occasional pushing and pulling of the right lower extremities. [Tr. 426]. On October 5, 2009, state agency medical consultant Dr. Parrish found Ms. Webb capable of the same things. [Tr. 451].

## DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g);

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984)(quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's residual functional capacity ("RFC") is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Here, the ALJ erred by not finding plaintiff disabled under the Medical Vocational Guidelines ("grids"). The ALJ assessed a RFC for medium work with a restriction only to

4

frequent reaching with her left upper extremity. [Tr. 23-24]. Based upon this RFC, the ALJ determined that plaintiff could perform her past relevant work. [*Id.*]. The ALJ's RFC finding is not supported by substantial evidence in the record. The ALJ did not properly evaluate the medical opinion evidence in the record and did not properly evaluate plaintiff's credibility which led to an unsupported RFC finding.

An ALJ must consider all medical opinions in a given case, assess the weight given each opinion, and if a medical opinion conflicts with the ALJ's RFC, the conflict must be explained in the decision. 20 C.F.R. § 404.1527(b); SSR 96-8p. Here, the ALJ inaccurately cited the consultative examination performed by Dr. Clark and did not discuss the weight given to his opinion. The ALJ claimed that Dr. Clark found that Ms. Webb had normal extremity strength, normal sensation, full range of motion and normal postural. [Tr. 22]. Although Dr. Clark did observe normal strength, he noted sensory disturbance in Ms. Webb's right leg and foot as well as limited lumbar range of motion and a positive straight leg raise test for nerve involvement. [Tr. 421-24]. Dr. Clark concluded that her back pain and radiating symptoms in her right leg limited her to sitting for no more than 30 minutes, standing for no more than 20 to 30 minutes and walking for no more than a block. [Tr. 423-24]. These limitations are inconsistent with the performance of more than sedentary work as light work requires standing and walking for most of the work day. 20 C.F.R. § 404.1567. The ALJ did not address the inconsistencies between Dr. Clark's opinion and his own RFC.

Further, the ALJ erred with respect to the state agency opinions. The ALJ cited the records assessment of Dr. Parrish who performed her assessment five months before Ms. Webb's current application was filed, but failed to cite to the state agency reviews performed for the current application. Although Dr. Parrish found that Ms. Webb could perform medium work [Tr.

5

23], both of the other state agency opinions found that Ms. Webb could perform light work at most. [Tr. 66–67, 87–89].

Finally, the ALJ erred in assessing plaintiff's credibility which further distorted his RFC finding. When an ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). The ALJ found Ms. Webb non-credible as a witness, but distorted the record in order to do so. He found that Ms. Webb was not credible regarding her symptomology because she was taking care of her brother who had prostate cancer, drove him to doctor's appointments and took care of the household chores. [Tr. 22]. This is plainly contradicted by the record. Ms. Webb testified that she stayed at her brothers home because she was homeless and answered the phone for him. [Tr. 38]. Her nieces helped with the housework, [Tr. 40–41], but her daughter did most of it including the bathroom cleaning, mopping, and sweeping. [Tr. 421–22]. Additionally, although she accompanied her brother to his medical appointments, his girlfriend drove them. [Tr. 39]. None of these activities are inconsistent with disability or a sedentary lifestyle.

The ALJ's opinion is not supported by substantial evidence. In fact, the record supports an RFC finding of sedentary for Ms. Webb. With an RFC of sedentary, a finding of disabled is directed by the grids. Ms. Webb's past relevant work is all at the light or medium level without transferrable skills to a sedentary setting. [Tr. 45–49]. Plaintiff was also 51 years old as of her alleged onset date and does not possess an education which would provide for direct entry into skilled labor. [Tr. 18]. Therefore, she should have been found disabled in accordance with grid rule 201.14. 20 C.F.R. § 404, Subpt. P, App. 1 § 201.14. Because the decision of the Commissioner is not supported by substantial evidence, and the substantial evidence supports a

Case 5:12-cv-00757-BO   Document 33   Filed 02/18/14   Page 6 of 7

finding of disabled under grids rule 201.14, the Court reverses the decision of the Commissioner and remands to the agency for an award of benefits.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings is GRANTED, and the decision of the Commissioner is REVERSED. The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one which "lies within the sound discretion of the district court." *Edwards v. Bowen*, 672 F.Supp. 230, 236 (E.D.N.C. 1987). Accordingly, this case is REMANDED for an award of benefits consistent with this Order.

SO ORDERED.

This *15* day of February, 2014.

*[signature]*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE